2020 PA Super 13

| | | |
|---|---|---|
| ALISON WILSON AND DAVID WILSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| CHAD PARKER AND JESSI PARKER | : | No. 657 WDA 2019 |

Appeal from the Judgment Entered, April 5, 2019
in the Court of Common Pleas of Bedford County,
Civil Division at No(s):  2015-1255.

BEFORE:   BENDER, P.J.E.,  KUNSELMAN, J., and PELLEGRINI, J.[*]

OPINION BY KUNSELMAN, J.:                       FILED JANUARY 24, 2020

## I.      Introduction

Plaintiffs, Alison and David Wilson, appeal from the judgment entered in favor of Defendants, Chad and Jessi Parker, in this dispute over a tract of land located in Bedford County, Pennsylvania.  The trial court decreed that (1) the statute of frauds[1] barred it from enforcing an oral contract in which the Wilsons allegedly purchased that land from the Parkers; (2) the Wilsons' alternative claim for unjust enrichment would not lie, because no enforceable contract existed; and (3) the Wilsons were evicted from the property.  The Wilsons do not appeal the trial court's first and third decrees.  However, they assert that the second decree is a misapplication of the law of unjust enrichment.  We

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The statue of frauds provides, in relevant part, "no . . . lands . . .  shall . . . be . . . granted . . . unless it be by deed or note, in writing, signed by the party . . . granting . . . the same . . . ."  33 P.S. § 1.

agree and reverse that portion of the decree which erroneously denied the Wilsons monetary relief.

## II. Factual Background

This lawsuit stems from the alleged sale of property between family members. David Wilson and Jessi Parker are brother and sister. David's wife Alison Wilson and Jessi's ex-husband Chad Parker are also parties to this action.[2]

In 2008, the Wilsons moved from West Virginia to Bedford County and began leasing the Parkers' trailer. The Wilsons orally agreed to pay rent to the Parkers in the amount of $400 per month. In 2009 or early 2010, after learning that Jessi Wilson had an inheritance coming to her, the parties talked about having the Wilsons purchase the property for $10,000. A few months later, the Parkers proposed the Wilsons purchase the trailer for $1,000.

Although the Wilsons paid the $1,000 in cash, the parties never took the title for the trailer to a notary for transfer, and Mr. Parker could not recall signing the title over to his in-laws. Thereafter, the Wilsons continued to pay lot rent in the amount of $100 for a few months, until they paid the additional $10,000 in July of 2011 for the land on which the trailer set. The Wilsons paid no additional rent thereafter.

Over the next seven years, the parties had many interactions regarding the possible sale of the property, but all parties agree that no deed or any

_____

[2] Jessi and Chad Parker divorced on September 11, 2018.

- 2 -

other writing ever changed hands. Shortly after Ms. Parker accepted the Wilsons' $10,000 check and deposited it into the Parkers' joint account, Mr. Parker asked the water company to change the water bill for the trailer to the Wilsons' names, because they had purchased the property. The Wilsons made improvements to the property, including building a new roof over top the trailer, putting in concrete footers to anchor the roof, a deck, a new bedroom, and flooring. They claim the cost of the improvements was $11,228.19. They also allege that Mr. Parker assisted them in building the roof and deck and provided his excavation equipment for digging. Mr. Parker claimed he paid for the concrete.

In November 2013, the Wilsons paid to survey the property after Ms. Parker indicated that her mortgage company needed it to release the property to be deeded to them. The survey indicated that the acreage for the parcel encroached beyond Mr. Parker's cow fence and into his pasture. Ms. Parker, testifying for the Wilsons, stated that this encroachment prompted Mr. Parker to refuse to give the Wilsons a deed to the land.

On November 15, 2015, Mr. Parker placed an eviction notice on the door to the trailer, and litigation ensued. After a non-jury trial, the trial court entered a decree of equity and judgment for the Parkers on all claims and on the Parkers' counter-claim. The court denied the Wilsons' post-trial motion for judgment as a matter of law, and this timely appeal followed.

### III. Analysis

The Wilsons raise one question for our review:

> Whether the lower court erred in denying [their] claim for unjust enrichment for the purchase price and cost of repairs and improvements after their oral contract to purchase the land was deemed unenforceable?

Wilsons' Brief at 4. Before discussing that issue, however, we address Mr. Parker's assertion that the Wilsons did not properly pray for damages in their Complaint. See Mr. Parkers' Brief at 1. He asserts this as an alternative basis for affirming the trial court's denial of monetary relief.[3]

A.    The Wilsons' Prayer for Equitable Relief

The Wilsons' Complaint alleged three counts – specific performance, promissory estoppel, and unjust enrichment. See Wilsons' Complaint at 4, 6, 7. The only count at issue here is the unjust-enrichment claim.

That count specifies the various amounts of money the Wilsons believe they invested in the Parkers' property over the time they resided there. They claim to have paid "$11,000 as the purchase price for the property, as well as $800 for the survey of the property and $575 for an appraisal of the property, and have expended over $15,000 making capital improvements to the property." Id. at 8. Moreover, the Wilsons alleged that, if the court does not order the Parkers to transfer title to them, the Parkers "will be unjustly enriched, not only by the sum of $11,000, but also by the capital improvements made to the property, and the value of the survey and the appraisal of the property." Id.

_____

[3] The rationale of a trial court does not bind this Court, and we may affirm its ruling on any basis. Ross v. Foremost Insurance Co., 998 A.2d 648, 656, n. 7 (Pa.Super. 2010).

- 4 -

However, in drafting the Complaint, the Wilsons' former lawyer placed the same prayer for relief after each of the three counts. In each of these wherefore clauses, the Wilsons asked the court to order the Parkers to produce a deed granting them title to "the property . . . consisting of 0.869 acres . . . together with the improvements, and such other remedies as this Court deems appropriate." Id. at 6-8.

According to Mr. Parker, "Because the [Wilsons] did not include a demand for monetary relief in the Complaint, and their claim for equitable relief is legally insufficient to imply such a demand, the trial court did not err when it declined" to award damages on the unjust-enrichment count. Mr. Parker's Brief at 10-11. He says that the Wilsons "appear to believe that including the phrase '[and] such other remedies as this court deems appropriate' is sufficient to meet the dictates of [Pennsylvania Rule of Civil Procedure 1021(a)]." Id. at 14. Mr. Parker does not think the Wilsons' prayer for general relief encompasses monetary damages for unjust enrichment. He relies upon Martindale Lumber Co. v. Tursch, 681 A.2d 803 (Pa.Super. 1996), to support his contention.

Mr. Parker's brief suggests that he properly preserved this issue for our review, because he objected to counsel's questioning of Mrs. Wilson on the value of the improvements she and Mr. Wilson made to the land. See Parkers' Brief at 13; see also N.T., 10/3/18, at 31-33. The trial court overruled that objection, based upon the inclusion of language in the Complaint seeking all other relief the court deemed appropriate. Mr. Parker also renewed his

objection to the lack of a specific request for monetary damages in the Complaint at the conclusion of trial. Critically, however, Mr. Parker filed no preliminary objections and no motion for judgment on the pleadings.

Whether a party has properly raised an issue below to preserve it for our review and whether the trial court properly applied the Rules of Civil Procedure in finding the Complaint to be legally sufficient "present questions of law, [for which] our standard of review is de novo, and our scope of review is plenary." Anderson v. McAfoos, 57 A.3d 1141, 1148 (Pa. 2012).

Pennsylvania Rule of Civil Procedure 1028 governs the basis, manner, and timing for objecting to the contents of a pleading, including a complaint. Such preliminary objections may include the "failure of a pleading to conform to law or rule of court" and any "insufficient specificity in a pleading." Pa.R.Civ.P. 1028(a)(2),(3).

Rather than file a preliminary objection to the Complaint's wherefore-clause to Count 3, Mr. Parker waited until the middle of the non-jury trial to attack the Wilsons' pleading. He contended that their prayer for relief failed to conform to the specificity required in Pennsylvania Rule of Civil Procedure 1021(a). He should have made that objection during the pleading phase of the action under Pa.R.Civ.P. 1028(a)(2),(3).

Indeed, Mr. Parker cannot claim prejudicial surprise by Ms. Wilsons' testimony regarding the costs of the improvements, because the Wilsons' fully and specifically pleaded their third count of unjust enrichment in the Complaint. They enumerated the upper limits of the monetary amounts they

felt that the then-married Parkers had unjust received from them. Mr. Parker erroneously asserts that "there [was] nothing pled which suggest[ed] the [Wilsons] were seeking monetary damages." Parkers' Brief at 17. Clearly there was. If the Wilsons' failure to total the sums in their third count and place that figure in the prayer for relief was of great concern to Mr. Parker, he was on notice of the clerical error the moment he first read the Complaint. Hence, Mr. Parker could have easily filed a preliminary objection on those grounds when he received the Complaint. He did not.

Moreover, the case upon which he relies – Martindale Lumber, supra – had a procedural posture quite different from this case. There, the lumber company filed a complaint solely and specifically within the jurisdiction of the equity court. The lumber company sought specific performance of a contract for the sale and harvesting of timber.

The Uniform Commercial Code[4] foreclosed specific performance and would only allow damages on a breach-of-contract theory, because the UCC dictates that timber is a fungible good. The lumber company, however, had neither pleaded breach of contract nor enumerated any monetary damages in its complaint. The defendants argued that equity could not grant the only type of relief sought under the UCC and moved for judgment on the pleadings, because the complaint on its face did not invoke the jurisdiction of the law court and, under the UCC, equitable jurisdiction was lacking.

_____

[4] See 13 Pa.C.S.A. §§ 1101 et seq.

The trial court denied the motion and proceeded to award damages for breach of contract under the UCC. We reversed, because certification to the law side was not an option (as no count for relief at law appeared in the complaint) and no such certification had taken place. We held that the chancellor had usurped the jurisdiction of the law court and thereby denied the defendants of their right to a trial by jury on the breach-of-contract question.

Unlike the defendants in Martindale, who properly challenged equitable jurisdiction by moving for judgment on the pleadings, Mr. Parker did not seek judgment on the pleadings. Nor did he claim that the matter was improperly proceeding in equity. Instead, he delayed his attack on the unjust-enrichment count until trial when he made a picayune argument regarding complaint draftsmanship. The Wilsons could have easily amended the scrivener's error of which Mr. Parker complained had he timely objected under Rule 1028. He did not provide them that opportunity.

We therefore hold that Mr. Parker waived his attack on the prayer for relief to the unjust-enrichment claim by waiting until the trial to raise it.

Even if Mr. Parker had filed preliminary objections to the Complaint or made a pre-trial motion to dismiss the count of unjust enrichment, he is incorrect on the law, and his reliance upon Martindale is misplaced. As previously mentioned, the lumber company, like the Wilsons, did not include a specific request for monetary damages in its wherefore clause. Unlike the Wilsons, however, the lumber company also had no count in its complaint

other than a count for specific performance. Thus, there was no allegation to implicate an award of monetary damages.

The Martindale Court therefore concluded that the chancellor should have granted judgment on the pleadings, because the equity court found that the UCC defeated the only count which the lumber company had brought. We explained it should have filed:

> a cause of action for breach of contract and for monetary damages. Nothing in the facts of this case warrants the grant of any type of equitable relief. [The lumber company] improperly invoked equitable jurisdiction from the inception. It was notified of this by way of [defendants'] motion for judgment on the pleadings. The equity court was without power to proceed once it determined that equitable jurisdiction improperly was invoked.

Martindale, 681 A.2d at 806.

The Wilsons, in contrast to the lumber company, included a count for unjust enrichment and itemized the value of the damages they thought they sustained when the Parkers reneged on the unenforceable, land-sale contract. See Pennsylvania Rule of Civil Procedure 1019(f). Their Complaint therefore succeeds where the lumber company's failed. The Wilsons sufficiently pleaded an alternative cause of action, a secondary path for recovery. The lumber company did not.

Martindale also rested largely on the jurisdictional distinctions between a court of equity and a court of law. Citing Holiday Lounge, Inc. v. Shaler Enterprises Corp., 272 A.2d 175 (Pa. 1971), we stated, because "no demand for monetary damages was made in the complaint, there was no remedy at

law which would satisfy plaintiff's claim. Therefore, the complaint could not be certified to the law side." Id. at 805 (emphasis added). Since the repeal of the Rules of Civil Procedure governing equitable actions under a separate jurisdiction in 2003 (effective summer of 2004), the need to certify an action "to the law side" has ceased.[5]

And, even if the jurisdictional distinction between the law and the equity sides of our trial courts still existed, Mr. Parker's attack on the Wilsons' prayer for relief would fail. Shortly after Holiday Lounge, the Supreme Court of Pennsylvania opined, "as early as 1868 this Court recognized that under a general prayer for relief an equity court may grant such relief as is 'agreeable' to the case pleaded and proven even though the relief granted differs from the specific relief prayed for." Sigal v. Manufacturers Light & Heat Co., 299 A.2d 646, 647 (Pa. 1973) (quoting Dombrowski v. City of Philadelphia, 245 A.2d 238 (Pa. 1968). Under Sigal and Dombrowski, the Wilsons' general prayer for any appropriate relief would be sufficient in the equity side of the court, because the monetary damages they included in their unjust enrichment count was agreeable to the case as pleaded. The lumber company's general prayer, which did not allege a breach of contract or list any

_____

[5] We also note that unjust enrichment "is essentially an equitable doctrine." Schneck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa.Super. 1995). Thus, that count would have been under the jurisdiction of equity, had such a distinction persisted when the Wilsons filed this case. No certification to the law side would have been needed upon the failure of the claim for specific performance.

monetary amounts, was disagreeable to a damages award in that case as pleaded.

In sum, we dismiss Mr. Parker's counter-appellate-issue as waived or, in the alternative, meritless. This is not a suitable, alternative basis to affirm the decree entered below.

B.      The Unjust Enrichment Claim

As previously mentioned, the Wilsons do not challenge the trial court's decisions that specific performance of the oral contract would be inappropriate or that it had to evict them from the trailer. "Once a matter has been decided by a trial judge, the decision should remain undisturbed, unless . . . an appeal therefrom is successfully prosecuted." Golden v. Dion & Rosenau, 600 A.2d 568, 570 (Pa.Super. 1991). Because the Wilsons have not appealed either of those rulings, we accept those two determinations as final for purposes of resolving this issue.

The Wilsons claim that the trial court misapplied the law of unjust enrichment, because it "mistakenly believed that unjust-enrichment claims require a contract, when in fact the opposite is true . . . ." Wilsons' Brief at 11. They also challenge the court's determination that they conferred no benefit on the Parkers who "received $10,000 for the purchase [of the land] and significant improvements to their trailer" at a cost of $11,228.19 for materials and labor. Id. at 11-12. The Wilsons contend this flies in the face of the uncontradicted evidence concerning the lease that the parties originally

made and how their rental practice changed upon paying $1,000 for the trailer and $10,000 to buy the land.

The Wilsons claim that, had there been no attempt to buy the land in the first place, their rent would have only totaled $9,000 from June 12, 2011 (the date they paid $10,000) through January 1, 2019 (the date of eviction). Because Mr. Parker did not deny telling the water company that the Wilsons purchased the land in July of 2011, they think that allowing him "to recover the rent would essentially ratify his disingenuous claim that the $10,000.00 was pre-paid rent and thwart the Wilsons' expectations of applying those funds toward property ownership." Id.

Finally, the Wilsons disagree with the trial court's refusal to award them the costs of the improvements they made to the property. In their view, the precedents required the trial court to find that those improvements unjustly enriched the Parkers.

Mr. and Ms. Parker disagree . . . with each other. Mr. Parker contests the Wilsons' position on this issue, as we explain below. See Mr. Parker's Brief at 19-25. Ms. Parker, however, does not. She filed no brief opposing this appeal, and she substantiated the Wilsons' allegations at trial. See N.T., 10/13/18, at 113-29.

For example, Ms. Parker admitted to accepting and cashing the $10,000 check to pay "for the land that we had agreed upon selling to David and Alison" Wilson. Id. at 114. She explained that Mr. Parker was aware of the transaction and that they sent $8,000 of the $10,000 to Wells Fargo to lower

the mortgage payments on their property.  Two years later, when the Wilsons had the land surveyed, Ms. Parker said that it was only then that Mr. Parker reneged on their deal:

> [O]riginally we were to sell the 0.869 [acres] to the Wilsons.
>
> And when the survey was done, it was more than that. And I personally don't think [Mr. Parker] liked the fact that [Mrs. Wilson] moved her parents in up there and stuff.  And [Mr. Parker and Mr. Wilson] worked together.  And that fell out, too.  So, I think it was a whole bunch of different reasons.

Id. at 116.  Shortly after receiving the survey results, Mr. Parker told her "to send a text to [Mr. Wilson] saying he'll give him the $10,000 back just to get [the Wilsons] to leave."  Id. at 118.  The Parkers did not refund the money, and the Wilsons continued living in the trailer.

Ms. Parker also admitted that she and Mr. Parker knew the Wilsons made improvements to the property.  She said her ex-husband "helped with the roof and the deck."  Id. at 119.  Finally, she testified that the Wilsons bought the trailer for $1,000.  See id. at 126.

In his brief, Mr. Parker attacks the Wilsons' view of the trial court's decision.  He thinks the Wilsons incorrectly state that the court's denial of their claim of unjust enrichment "was tied directly to its finding that there was not an enforceable contract for the conveyance of that land."  Mr. Parker's Brief at 19.  Instead, he believes the trial court found that the parties had no agreement compelling reimbursement to the Wilsons for the improvements to the trailer.  "It is the absence of this agreement, not an agreement for the

sale of land, which is fatal to [the Wilsons'] claim for unjust enrichment." Id. at 20. Mr. Parker insists that one "will only [be] found liable on an unjust-enrichment claim when a reasonable person should have known that the services were provided with the expectation of payment." Id. at 21.

He also argues that the Wilsons do not deserve a refund of the $10,000 purchase price, because they lived in the trailer thereafter without paying rent. By the Wilsons "own calculation [this] would have exhausted at least $9,000.00 of that amount." Id. at 22; see also Wilsons' Brief at 14 n. 7. Thus, Mr. Parker asserts that neither he nor Ms. Parker[6] "received any unconscionable benefit from this payment." Id. at 22.

_____

[6] Mr. Parker has no standing to argue on behalf of his ex-wife. At first, defense counsel represented both Parkers, and he continues representing Mr. Parker on appeal. However, Mr. Parker's lawyer moved to withdraw representation from Ms. Parker a week before the trial was supposed to begin. See Motion to Withdraw and Continue Trial of Attorney Daniel L. Stants, Esq., 7/23/18.

Despite being her counsel of record from February 11, 2016 through July of 2018, Attorney Stants never met Ms. Parker until he examined her at trial. Shortly before trial, he learned from Mr. Parker that the couple were getting divorced and that Mr. Parker believed that Ms. Parker was not willing to cooperate with him in defending this case. See id. at 1.

Attorney Stants therefore averred that "a conflict [had] arisen between the Defendants, [and he now had] a conflict of interest which, pursuant to Rule 1.7(a)(2) [of the Pennsylvania Rules of Professional Conduct], require[d] Defendants' counsel [to cease] representing both clients jointly in this matter." Id. at 2. Because she moved out of the marital home and no one provided the trial court her new address, Ms. Parker only received notice of Attorney Stants' withdraw motion after the court had granted it. Ms. Parker thereafter proceeded pro se.

As for the improvements to the trailer, Mr. Parker claims he received no benefit from them, "and the work itself was of such poor quality that the trailer must now be demolished." Id. at 23. He also notes that he never granted the Wilsons permission to make the improvements, so they could not have a reasonable expectation of compensation. Mr. Parker then goes through a litany of the grievances that prompted him to seek the Wilsons' eviction. See id. at 23-24. He cites to 8A SUMMARY OF PENNSYLVANIA JUR.2d (Property) § 26.58 and three trial court opinions to support his contention that no refund is required.

When reviewing equitable decrees, our scope of review and standard of review[7] are deferential, but our deference has limits. This Court has said:

> We are bound to accept the [trial judge's] findings of fact, and accord them the weight of a jury verdict where supported by competent evidence. As for . . . factual and

_____

Thus, when Attorney Stants argues on behalf of "the Appellees" (and he does so repeatedly in this appeal), he exceeds the scope of his representation. See, e.g., Mr. Parker's Brief at 22. If this was inartful draftsmanship, counsel should take better care in preparing his filings. If this was an attempt to make Mr. and Ms. Parker's views appear united, we strongly disapprove. Either way, this Court declines to impute Mr. Parker's arguments to Ms. Parker.

[7] We note that, regrettably, neither party properly briefed this Court's scope and standard of review as Rules of Appellate Procedure 2111(a)(3) and 2112 require. The Wilsons' statement is inaccurate – i.e., "Whether the lower court erred as a matter of law or abused its discretion in denying [the Wilsons'] claim for unjust enrichment." Wilsons' Brief at 3. This is the issue under review, and, while it dictates our scope and standard of review, it is neither. Moreover, Mr. Parker did not offer a counter-statement to the Wilsons' misstatement. For a detailed explanation of what "scope of review" and "standard of review" are, see Morrison v. Com., Dep't of Pub. Welfare, Office of Mental Health, 646 A.2d 565, 569-71. (Pa. 1994).

legal conclusions, we are not bound by the [trial] court's reasoning, and may reverse for an abuse of discretion or error of law.

Den-Tal-Ez, Inc. v. Siemens Capital Corp., 566 A.2d 1214, 1217 (Pa.Super. 1989). We accept the factual findings of a trial court sitting in equity, if they "are largely dependent upon the credibility of witnesses . . . because the demeanor and credibility of witnesses, as well as conflicts in the evidence presented, are issues solely determined by the trier of fact and, therefore, beyond the scope of review of appellate courts." Yarnall v. Almy, 703 A.2d 535, 536 (Pa.Super. 1997).

Here, the trial court delivered its findings of facts and conclusions of law from the bench.[8] The bulk of the court's decision focused on the request for specific performance and statute of frauds. The trial court found that (a) there were no pertinent conflicts in the testimony to resolve and (b), even with the undisputed evidence, the Wilsons failed to establish an oral contract to buy the land "by full, complete, and satisfactory proof." N.T., 12/27/18, at 15 (quoting Kurland v. Stolker, 533 A.2d 1370 (Pa. 1987)).

The trial court then ruled as follows:

> So I think absent a written agreement, there is . . . no contract here for sale of the property. So on the Complaint, on Count 1 specific performance, that relief is going to be denied. Under the promissory estoppel, because I still think you have to show . . . you have to remove it from the statute of frauds, I'm going to deny the relief under Count 2.

_____

[8] Even the court's 1925(a) Opinion merely directs that we should read the transcript of its oral decision.

On the unjust enrichment [Count 3], there has to be conferment of benefit, a receipt of benefit, and it would have to be unjust for the [Parkers] to retain that benefit. I just, I don't see where the unjust enrichment is here, given that I'm finding there was no agreement between the parties.

Id. at 23-24. And so, the trial court denied the Wilsons relief on the third count as well.

The parties disagree as to whether the court meant a contract for the land itself or a contract to reimburse the Wilsons. This distinction would make no difference though, because the trial court had the law of unjust enrichment entirely backwards.

The absence of an enforceable contract is not, as the trial court held and as Mr. Parker claims, "fatal to [the Wilsons'] claim for unjust enrichment." Mr. Parker's Brief at 20. On the contrary, the absence of an enforceable contract at law is the seed from which an unjust-enrichment claim in equity sprouts. "The quasi-contract theories of quantum meruit and unjust enrichment, by definition, imply that no valid and enforceable written contract exists between the parties. Critically . . . the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." Shafer Elec. & Const. v. Mantia, 67 A.3d 8, 13 (Pa. Super. 2013), affirmed on other grounds, 96 A.3d 989 (Pa. 2014).

Thus, the trial court erred as a matter of law by reasoning that the lack of a legally binding contract barred the Wilsons from recovering for unjust enrichment. The Wilsons had every right to pursue that alternative theory once the trial court denied specific performance due to the statute of frauds.

As the term "unjust enrichment" implies, recovery under that doctrine requires (1) an enrichment that (2) was unjust. See Chesney v. Stevens, 644 A.2d 1240, 1243 n. 4 (Pa.Super. 1994) (citing Meehan v. Cheltenham Township, 189 A.2d 593, 595 (Pa. 1963)). This is a matter of equity, and, to succeed, the plaintiff must prove:

> (1) benefits [were] conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value . . . In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 179 A.3d 1093, 1102 (Pa. 2018) (emphasis added).

The Wilsons assert that the Parkers benefited from two sources: (1) the June 13, 2011 check for $10,000 that Ms. Parker used to pay down the Parkers' mortgage; and (2) the $11,228.19 worth of materials and labor that the Wilsons put into improving the land between July of 2011 and March of 2014. Thus, they ask this Court to award them judgment in the amount of $21,228.19.

Rather than considering these separate items individually, the trial court conflated them into one concept:

> The [Wilsons] expended resources of their own for their benefit of living in the trailer, and they did so for several years. I mean, after they paid the $10,000.00,

they've now lived there for seven years being rent free. Like I said now they haven't paid anything.

Now, I know [the Wilsons are] indicating that they purchased the real estate they were living on then. But, given that I'm finding that there was no contract for that – that's provable, at least – they have lived there rent free for several years. And they've - - that's what they expended the resources [for,] to be able to live there.

So, and I don't think there would be any expectation of the [Parkers] to reimburse [the Wilsons] for those repairs to the real estate, given the nature of the repairs and the fixes to the trailer that they did . . .

N.T., 12/27/18, at 24-25.

By intertwining the two sources of recovery (the $10,000 check and the cost of improvements) and juxtaposing its finding that there was no contract for the sale of the land into this analysis, the trial court has rendered a decision that is irrational and departs from the competent evidence that emerged at trial. For example, in the same breath, the trial court found that the Wilsons, in fact, paid the Parkers $10,000 but somehow also "haven't paid anything." Id. at 24. Clearly these contradictory findings cannot both be true, and the latter finding inexplicably disregards the competent and undisputed evidence that (a) the Wilsons made the $10,000 payment by check to Ms. Parker, (b) Ms. Parker cashed that check into the Parkers' joint account, and (c) she immediately used $8,000 of it to lower their mortgage payments.

Moreover, the trial court applied the wrong test. Instead of deciding "whether the defendant[s were] unjustly enriched," Meyer, Darragh, Buckler, Bebenek & Eck, supra, the trial court did what the High Court

instructed it not to do. The court below focused "on the intention of the parties" when it reviewed the Wilsons' $10,000 check and their improvements to the trailer. Id. Thus, the fact that the Wilsons "expended the resources to be able to live" in the trailer is irrelevant under Meyer, and the trial court should have disregarded it. N.T., 12/27/18, at 24.

Founded upon misapplications of law and irrelevant facts, we reject the trial court's equitable decree on the unjust-enrichment count as being palpably erroneous and an abuse of discretion. Applying the proper test, we now consider whether the events of this case have unjustly enriched the Parkers.

The $10,000 check that the Wilsons and Ms. Parker agree was payment for title to the land was a benefit that the Wilsons conferred on the Parkers and that the Parkers realized when Ms. Parker cashed it in the Parkers' joint account. Thus, the payment clearly satisfies the first two prongs of the unjust-enrichment test that the Supreme Court articulated in Meyer, supra.

The more difficult question is whether it would be unjust for the Parkers' to retain that $10,000. Usually, when a trial court declines to enforce an oral contract for the sale of land under the statue of frauds, the court returns the parties to the position they occupies prior to the failed transaction. This means it will order the would-be seller to return to the would-be buyer any funds paid under the nullified contract. Under the facts as found by the trial court, the Wilsons therefore would normally be entitled to full restitution damages of their $10,000.

J-A29024-19

Such damages may "be imposed for breach of an oral agreement . . . notwithstanding the fact that the statute of frauds rendered the oral agreement unenforceable for specific performance." Fannin v. Cratty, 480 A.2d 1056, 1059 (Pa.Super. 1984). "A party who would otherwise have a claim in restitution under a contract is not barred from restitution for the reason that the contract is unenforceable by him because of the Statute of Frauds . . . ." RESTATEMENT (SECOND) OF CONTRACTS § 375. As the RESTATEMENT makes clear, returning the funds to the Wilsons vindicates the statute of frauds by fully rescinding the unenforceable, oral contract to sale the land that the Parkers and Wilsons allegedly formed.

Comment (a.) to Section 375 explains:

a. Restitution generally available. Parties to a contract that is unenforceable under the Statute of Frauds frequently act in reliance on it before discovering that it is unenforceable. A party may, for example . . . . make improvements on land that is the subject of the contract. The rule stated in this Section allows restitution in such cases.

Id.

Section 375 of the RESTATEMENT (SECOND) OF CONTRACTS accords with the law of this Commonwealth. See, e.g., Chesney, supra (holding that, when a long-term resident makes improvements to property but a court later finds that he has no ownership interest, the resident is entitled to restitution for improvements from the lawful owner). Consistent with the purpose of the statute of frauds, awarding restitution damages does not enforce the oral contract, but rather cancels it. Having set aside the oral contract between the

- 21 -

Parkers and the Wilsons to purchase the land in issue, equity would usually require the Parkers to return the $10,000 they received from the Wilsons.

However, the Wilsons also resided on and had the exclusive use of the land in question for seven years. The RESTATEMENT covers this exact scenario in Illustration #2 of Section 375:

> 2. A makes an oral contract to sale a tract of land to B for $100,000. B pays $50,000, takes possession and makes improvements. A then refuses to convey the land to B, and B sues A for restitution of $50,000, plus $20,000, the reasonable value of the improvements, less $5,000, the value to B of the use of the land. B can recover $65,000 from A.

Id. In other words, the would-be buyer recoups both her purchase price (minus the value of using the land – i.e., rent) and the cost of improvements made during her time in possession of the property.

Here, prior to the $10,000 payment, the Wilsons paid the Parkers land rent at the cost of $100 per month. They have admitted on appeal that the seven years in possession following that $10,000 payment would have come to $9,000 in rent. Just as in Illustration #2 above, the Wilsons are entitled to a refund of their purchase price, minus the rent they would have paid for seven years' use of the land. It would be unjust for the Parkers to retain the additional $1,000 which they gained by refusing to perform an oral contract to sale the land and to which they have no rightful claim as landlords. Hence, the Parkers owe the Wilsons $1,000 of the $10,000, plus interest on $1,000 calculated monthly from July 1, 2011.

The Wilsons' claim for unjust enrichment based on the improvements they made to the land is equally meritorious. Mr. Parker attempts to discount the $11,228.19 as having afforded him no benefit by emphasizing his testimony that the trailer would need to be torn down. This prediction, however, is beside the point. First, we note that the roof and the deck were attached to the land — not the trailer — and there was no testimony that those improvements were to be demolished. Second, even if Mr. Parker removes those constructions in the future, the Parkers still reaped and retained benefits from them for a time.

There was undisputed testimony that the trailer was leaking. Therefore, the Wilsons constructed a roof over it, and they anchored the roofs' supports into the ground with concrete bases. They also added a deck and another room onto the trailer. Under the trial court's finding that the statute of frauds prohibited it from ordering the transfer of title to the Wilsons, the Parkers remained the owners and landlords of the parcel. As such, they had the obligation to repair the leaking roof or erect a new one at their own expense. See, e.g., Pugh v. Holmes, 405 A.2d 897, 905 (Pa. 1979) (implying a warranty of habitability in all residential leases and requiring "that a landlord will provide facilities and services vital to the life, health, and safety of the tenant and to the use of the premises for residential purposes.")

Moreover, Mr. Parker won possession and use of all of the other improvements that the Wilsons made when the trial court evicted them.[9] Under these circumstances it would be unjust for Mr. Parker to acquire possession and use of the parcel in question without compensating the Wilsons for the parts and labor they expended to improve that parcel. The trial court found that the improvements permitted the Wilsons to continue inhabiting the trailer for seven years — the seven years for which the Parkers may lawfully collect rent out of the $10,000 purchase price. Hence, the improvements benefited the Parkers twofold. One, the Wilsons did the Parkers' job of maintaining a habitable property, and, two, the Parkers could thereby retain $9,000 of the purchase price.

Mr. Parker also argues 8A SUMMARY OF PENNSYLVANIA JUR.2d (Property) § 26.58 and various trial court opinions bar the Wilsons from recovering the costs of any improvements. We disagree.

Section 26.58 (Property) states, in relevant part:

> If a tenant makes improvements to the premises, those improvements become the property of the lessor, and the lessor is under no duty to reimburse the tenant for the costs of making the improvements unless (1) the improvements were made at the request of the lessor, and (2) a promise by the lessor to repay the lessee is either contained in the lease or can be implied from the circumstances.

---

[9] We note that, by the time of the trial court's decree, Ms. Parker no longer had equitable ownership or use of the property in issue, because the divorce decree directed her to grant her title in the land to Mr. Parker.

8A SUMMARY OF PENNSYLVANIA JUR.2d (Property) § 26.58. This statement cites no appellate precedent; instead, it relies upon three opinions from various courts of common pleas. The "decisions of the Court[s] of Common Pleas are not binding precedent; however, they may be considered for their persuasive authority." Hirsch v. EPL Techs., Inc., 910 A.2d 84, 89 n.6 (Pa.Super. 2006).

We do not find persuasive any of the trial-court cases that the SUMMARY cites, given that none is factually similar to the matter at bar. The first case is DeLeone v. Azad, Inc., 52 Pa.D.&C.2d 727 (C.C.P. Philadelphia 1971), and Mr. Parker relies upon it. See Mr. Parker's Brief at 25. In DeLeone, a commercial landlord sued to enjoin his tenant, a rental-car business, from continuing to use gas tanks and pumps that the tenant had installed on the property. The trial court, quoting from the lease, said "improvements or additions to the demised premises . . . shall remain upon the premises at the expiration or sooner of this lease and become the property of the lessor." Id. at 729. But the trial court never announced this as a rule of law as the SUMMARY seemingly implies. Thus, DeLeone does not support Mr. Parker's position.

In addition, this case had nothing to do with an unenforceable, oral-contract for the sale of the land where the would-be buyers were in possession. Thus, the parties in DeLeone fully knew they were dealing with one another as landlord and tenant, and they had a written, commercial lease governing their conduct and duties. Here, by contrast, the parties never

entered into a written lease, and the use of the property was residential. Unlike the rental-car business in DeLeone, the Wilsons never agreed in their lease that the Parkers would take ownership of any improvements or additions to the land free of charge. Thus, we find DeLeone to be unpersuasive.

Next, the SUMMARY and Mr. Parker cite to Graham Aviation Co. v. City of Johnstown, 69 Pa.D.&C. 609 (C.C.P. Cambria 1949) (en banc). There, the tenant-business entered into a long-term lease with the city to operate a municipal airport during World War II. The lease required the tenant to make certain improvements to specific structures and included a formula for the city to reimburse the tenant for making them. After a delay due to the U.S. War Department, the tenant made the required improvements and also renovated the caretaker's house even though the lease did not call that improvement. Applying the language of the lease as written, the trial court opined:

> The lease provided . . . the city should acquire title to the [tenant's] improvements and pay for them.
>
> *    *    *    *    *
>
> We do not believe [tenant] is entitled to compensation for improvements made by it to the caretaker's house . . . the city should acquire title to and reimburse [tenant] for "all of the improvements erected and installed under this lease." As we view the matter, the work done on the caretaker's house was not an improvement "erected and installed . . . under this lease."

Id. at 616-18.

Admittedly, this holding favors Mr. Parker. However, we decline to apply it here, because, Graham Aviation also involved a written, commercial lease, and the parties clearly delineated their obligations to one another in it. Thus, unlike the Wilsons and Parkers who failed to reduce their agreement to writing, the city and its tenant predetermined their conduct, and the court was bound to enforce their contract as written. In other words, unjust enrichment was not before the Graham Aviation Court, because a written lease controlled.

Finally, the SUMMARY cites Reynolds v. Kachullis, 16 Pa.D.&C.2d 279 (C.C.P. Mercer 1958). This opinion overruled the landlords' preliminary objections to their tenant's complaint in assumpsit, where the commercial tenant rented a bowling alley and alleged that he made improvements to the property "with the consent and approval of the [landlords] and at their request . . . ." Id. at 280. The trial court therefore analyzed the complaint under an implied-contract theory, rather than unjust enrichment. Reynolds is thus inapposite to the matter at bar both procedurally and substantively.

Accordingly, we conclude that the authority to which Mr. Parker cites is distinguishable. We are convinced the Wilsons may recoup the cost of the improvements they made under Chesney, supra, and the RESTATEMENT (SECOND) OF CONTRACTS § 375. We award them $11,228.19 for the costs of materials and labor that they expended upon improving the Parkers' property.

VI. Conclusion

Properly applying the law of unjust enrichment to the undisputed evidence from trial, this Court holds that the Wilsons should recover a total of

$12,228.19 from the Parkers. They are also entitled to 8 ½ years' worth of interest on $1,000.[10] When, as here, parties to an oral contract leave that transaction uncompleted and the statue of frauds bars specific performance, a court may, in all fairness, restore the parties to the positions they would have occupied had neither party performed any part of the unenforceable agreement. By denying the Wilsons' unjust-enrichment claim, the trial court failed to negate both sides of the oral contract for the sale of land. Instead, it gave the Parkers an inequitable windfall.

We therefore vacate the judgment as entered, reverse the order denying post-trial relief, and remand for the entry of an order and judgment granting the Wilsons restitution damages in accordance with this Opinion.

Judgment vacated; order denying post-trial relief reversed; case remanded for further proceedings.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  1/24/2020

_____

[10] We cannot accurately award interest on the costs of materials and labor for the improvements, because the Wilsons offered no evidence establishing on which dates they made those improvements.