J-A22001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHELLENE WYRICK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES DAVID CAPERELLI AND JOHN | : | |
| CAPERELLI | : | |
| | : | |
| | : | No. 1557 MDA 2020 |
| Appellant | : | |

Appeal from the Judgment Entered November 17, 2020
In the Court of Common Pleas of Lancaster County Civil Division at
No(s): CI-17-00402

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:          **FILED: DECEMBER 10, 2021**

James David Caperelli ("James") and his father, John Caperelli ("John") (collectively, "the Caperellis"), appeal from the judgment entered in favor of Shellene Wyrick ("Wyrick") and against the Caperellis. Specifically, the Caperellis challenge the trial court's ruling that they were not entitled to a jury trial on their counterclaims. After careful review, we vacate the judgment, reverse the order denying the Caperellis' post-trial motion, and remand for a jury trial.

Given our disposition, we do not recite the facts at length. Briefly, this case involves a pet care business, Jungle Jim's Total Pet Care ("JJTPC"), which the Caperellis opened in 2015. John provided the start-up capital and managed the bookkeeping while James ran the day-to-day operations. In April 2016, James and Wyrick began a romantic relationship. Wyrick

suggested opening a franchise of JJTPC in Delaware, where she and James planned to move. On July 25, 2016, Wyrick wrote a check to John for $12,000, with the notation "Jungle Jim's Total Pet Care purchase/buyout." Upon receiving the check, John used it to pay off several of JJTPC's debts and ceased all participation in JJTPC. Three days later, Wyrick wrote a $4,000 check to JJTPC for repairs to the building. Thereafter, Wyrick and James, *inter alia*, were issued an EIN number for JJTPC, organized JJTPC as an LLC in Pennsylvania listing Wyrick and James as the two members, and signed an agreement concerning Wyrick's $16,000 investment. The agreement stated that Wyrick would "retain 50% ownership in all businesses affiliated with [JJTPC] from dates of transfer of the funds mentioned above until such investment is paid back fully along with 5% interest." Plaintiff's Exhibit 3.

In the meantime, on September 25, 2016, Wyrick signed a real estate agreement for a home in Delaware, for which James provided the down payment. However, on October 23, 2016, James assaulted Wyrick, and she immediately ended their relationship. Thereafter, Wyrick cancelled the real estate contract and James sold JJTPC for $55,000.

On January 20, 2017, Wyrick filed a complaint against James for one count of violating the Partnership Code, one count of unjust enrichment, and two counts of breach of contract, as well as one claim of unjust enrichment against John. She sought relief in the form of $16,000 plus interest (return of her investment) or $27,500 (50% of the sale of JJTPC). James and John

filed individual answers and counterclaims for breach of contract related to the move to Delaware and sale of JJTPC. Thereafter, the matter proceeded to compulsory arbitration and an award was entered in favor of Wyrick.

The Caperellis appealed to the trial court, demanding a jury trial consistent with Pa.R.C.P. 1007.1(b). In accordance with their jury demand, the case was listed for a jury trial the week of March 23, 2020. Thereafter, it was rescheduled to August 31, 2020. On July 15, 2020, Wyrick filed a motion for a bench trial.[1] Therein, she withdrew her unjust enrichment and breach of contract claims against James relating to a joint credit account that had been settled, and also withdrew her second breach of contract claim against James so the action could proceed via a bench trial. The Caperellis filed an answer and brief objecting to Wyrick's motion. Specifically, they argued that Wyrick initiated the matter as a legal action and they were entitled to a jury trial based on their counterclaim. Nonetheless, the trial court scheduled the matter for a bench trial. On September 30, 2020, the Caperellis filed a motion to amend their counterclaim, this time to include a second count of promissory

_____

[1] We observe that in Wyrick's statement of the case, she contends that "[a]s a result of the COVID pandemic, the jury trial was repeatedly continued" and "[w]ith no end in sight to the judicial emergency, and thus no realistic date to try this matter before a jury," she filed the motion for a bench trial. Wyrick's brief at 6. However, her motion only mentions the pandemic in explaining that the case had previously been postponed. Neither she nor the trial court suggested that the motion was sought or granted because of the pandemic or the judicial emergency. Accordingly, we do not address the implications of the COVID-19 pandemic and accompanying judicial emergency on the Caperellis' right to a jury trial.

estoppel in response to the case proceeding in equity. The trial court denied the motion and a bench trial was held on November 16, 2020. Wyrick, John, and James testified. The trial court found in favor of Wyrick and against the Caperellis in the amount of $19,440.49.

This appeal followed the denial of the Caperellis' post-trial motion and entry of judgment on the verdict. The Caperellis and the trial court complied with Pa.R.A.P. 1925. The Caperellis raise five contentions on appeal:

1. Whether the trial court's determination that defendants were not entitled to a jury trial on their breach of contract counterclaim was reversible error.

2. Whether the trial court's finding that a partnership agreement existed between appellee and each defendant separately is reversible error.

3. The trial court's finding of fact that John Caperelli was unjustly enriched is reversible error unsupported by material evidence on the record.

4. Whether the trial court erred and/or committed a manifest abuse of discretion in denying Appellant's motion to amend counterclaim . . .

5. Whether Judge Sponaugle's witness credibility determination was a manifest abuse of discretion.

The Caperellis' brief at 12.

The Caperellis first argue that the trial court erred in concluding they waived their right to a jury trial. The Caperellis' brief at 22. The following principles guide our review.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed

- 4 -

error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664–65

(Pa.Super. 2014).

The applicable constitutional provision provides, in relevant part, that "trial by jury shall be as heretofore, and the right thereof remain inviolate." Pa. Const. art. 1, § 6. In construing this section, this Court has consistently held that the right to a jury trial as preserved by our Constitution extends to all causes of action that existed at the time the Constitution was adopted.

*Advanced Tel. Sys., Inc. v. Com-Net Pro. Mobile Radio, LLC*, 846 A.2d

1264, 1274 (Pa.Super. 2004) (cleaned up).

[O]ur Pennsylvania Supreme Court has concluded that the Pennsylvania analysis of whether there is a right to a jury trial [follows a] three-prong test: Initially, the court is to determine whether there is a statutory basis for a jury trial. If no statutory basis exists, the next inquiry is whether the particular cause of action existed at the time the Pennsylvania Constitution was adopted. Finally, if the cause of action and a right to jury existed at that time, then the inquiry is whether a common law basis existed for the claim.

*Id*. at 1275–76. Of relevance here, Article I, Section 6 "does not permit a

jury trial in an ordinary equity action." *Rosenberg v. Rosenberg*, 419 A.2d

167, 168 (Pa.Super. 1980) (citation omitted).

Rule 1007.1 details the requirements for demanding a jury trial in a civil action as follows:

> (a) In any action in which the right to jury trial exists, that right shall be deemed waived unless a party files and serves a written demand for a jury trial not later than twenty days after service of the last permissible pleading. The demand shall be made by endorsement on a pleading or by a separate writing.
>
> (b) Where an appeal is taken from an award in compulsory arbitration and jury trial has not theretofore been demanded, the right to a jury trial shall be deemed waived unless the appellant endorses a demand for a jury trial on the appeal, or unless the appellee files and serves a written demand for a jury trial not later than ten days after being served with the notice of appeal.
>
> (c)(1) A demand for trial by jury may not be withdrawn without the consent of all parties who have appeared in the action.
>
> > (2) A demand for a trial by jury on behalf of a party shall be deemed withdrawn if at the time a case is called for trial that party, without satisfactory excuse, fails to appear or appears but is not ready. Any other party appearing and ready who has not already demanded a trial by jury shall forthwith demand a trial by jury or shall be deemed to have waived the same.

Pa.R.C.P. 1007.1.

Wyrick initiated the instant civil action based upon violations of the Partnership Code, unjust enrichment, and breach of contract; the Caperellis filed a breach of contract counterclaim. All parties sought monetary relief. As correctly observed by the parties and the trial court, the right to a jury trial only attached to the breach of contract claims. *See Wilson v. Parker*, 227 A.3d 343, 349 n.5 (Pa.Super. 2020) (noting that unjust enrichment is an equitable doctrine); *Petrecca v. Allstate Ins. Co.*, 797 A.2d 322, 325

(Pa.Super. 2002) (cleaned up) ("It is axiomatic that the right to a jury trial applies to breach of contract claims requesting only monetary damages."); 15 Pa.C.S. § 8101 (Partnership Code effective 1989). Although the Caperellis could have filed a demand at the outset, pursuant to Pa.R.C.P. 1007.1(b), they did not waive their right to a jury trial because they endorsed a demand for a jury trial upon their appeal from the arbitration award.

In its Rule 1925(a) opinion, the trial court states that it granted Wyrick's motion for a bench trial because Wyrick withdrew her breach of contract claims and since the Caperellis "raised a counterclaim for breach of contract rather than asserting a separate action of law . . . , they [we]re not entitled to a jury trial." Trial Court Opinion, 2/22/21, at unnumbered 4 (citing *Rosenberg*, *supra*).

In *Rosenberg*, Wife initiated an action in equity against Husband. Husband brought legal counterclaims, to which Wife alleged she had a right to a jury trial. Pursuant to then-effective Rule of Civil Procedure 1510(b), a counterclaim to an equity action must "be pleaded and tried as an action in equity." The court found that rule violated Article I, Section 6 of the Constitution of Pennsylvania, and therefore held that Wife was entitled to a jury trial on Husband's counterclaim. Husband appealed to this Court. We began by observing that Article I, Section 6 "does not permit a jury trial in an ordinary equity action." *Rosenberg*, 419 A.2d at 168 (citation omitted).

> We hold that when a litigant chooses to initiate an action in equity that he has assented to have all matters arising out of the same

occurrence or transaction decided by the equity court and has, therefore, waived the right to a jury trial with respect to the case in chief or any properly maintained counterclaim. Likewise, a defendant who files a legal counterclaim to an equitable action, rather than asserting it as a separate action at law, has waived any right to have the issues of fact thus raised tried by a jury. We are not unmindful of the fact that other jurisdictions have been divided over this issue. We feel, however, that justice will best be served by adhering to the less confusing and burdensome procedure as set forth in Rule 1510(b) and having all of the issues relative to the same occurrence or transaction resolved in one proceeding as has been the practice in this Commonwealth in the past. The cause of judicial expediency and the timely resolution of conflicts will also be advanced by adhering to this procedure. Because we have held that the plaintiff in the instant case chose to waive any right to a jury trial when she initiated the original action in equity we hold that no conflict exists between Rule 1510(b) and Article I, Section 6 of the Pennsylvania Constitution.

***Rosenberg***, ***supra*** at 169.

Upon review, we conclude that the trial court's reliance on ***Rosenberg*** is inapposite. First, the portion of the holding pertaining to a defendant's right to a jury trial on a counterclaim to an equity action was dicta. Second, the distinction between equity and legal pleadings at the time ***Rosenberg*** was decided has since been abolished. Rule 1510, relied upon in ***Rosenberg***, has been replaced by Rule 1031, which provides as follows:

(a) The defendant may set forth in the answer under the heading "Counterclaim" any cause of action cognizable in a civil action which the defendant has against the plaintiff at the time of filing the answer.

(b) A counterclaim need not diminish or defeat the relief demanded by the plaintiff. It may demand relief exceeding in amount or different in kind from that demanded by the plaintiff.

Pa.R.C.P. 1031. As our Supreme Court recently noted,

- 8 -

[T][he Rules of Civil Procedure eliminate the pleading distinctions within the consolidated "civil action." However, this does not alter the distinctions in entitlement to relief.

> The separate action in equity has been abolished and the rules governing the civil action have been amended to include equitable relief. The consolidated civil action allows the court in a "unified judicial system" to grant the relief to which the parties are entitled, whether legal or equitable.

> The amendments address the concept of form of action, not cause of action. In merging the action in equity into the civil action, the action in equity as a separate form of action has been abolished but the cause of action in equity remains. The amendments have no effect upon a party's entitlement to equitable relief. Stated another way, a court may grant equitable relief only if a party is entitled to such relief as a matter of law.

Pa.R.C.P., Equitable Relief- Explanatory Cmt.-2003.

*SLT Holdings, LLC v. Mitch-Well Energy, Inc.*, No. 6 WAP 2020, 2021 WL 1676362, at *2 n.4 (Pa. Apr. 29, 2021).

Instantly, unlike the plaintiff in *Rosenberg*, Wyrick brought an action seeking legal, not solely equitable, relief. In response, the Caperellis filed a counterclaim also seeking legal relief, which was permissible under Rule 1031. Thereafter, the Caperellis properly invoked their demand for a jury trial following their arbitration appeal. It was not until approximately one month before trial that Wyrick withdrew her claims entitling her to a jury trial in an attempt to proceed via a bench trial. Since the Caperellis' counterclaim remained and they did not waive or withdraw their demand for a jury trial in accordance with Pa.R.C.P. 1007.1(c), the trial court erred in granting Wyrick's

motion for a bench trial. Accordingly, we vacate the judgment, reverse the order denying the Caperellis' post-trial motion, and remand for a jury trial.[2]

Judgment vacated. Order reversed. Remanded for jury trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/2021

---

[2] Given our disposition, we do not reach the Caperellis' remaining claims. Regarding the Caperellis' issue challenging the denial of their motion to amend their counterclaim pleading, we note that the amendment was only sought in response to the trial court's granting of Wyrick's motion for a bench trial. Since we conclude that the Caperellis are entitled to a jury trial and the case will no longer be proceeding in equity, this issue is moot.