J-S18005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARK S. FRICK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE A. FRICK AND BARBARA A. FRICK | : | |
| | : | |
| | : | No. 1382 WDA 2023 |
| Appellants | : | |

Appeal from the Judgment Entered January 3, 2024
In the Court of Common Pleas of Erie County
Civil Division at No(s): Case No. 11388-21

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED: July 23, 2024**

Bruce A. Frick ("Bruce") and Barbara A. Frick (collectively "Appellants") appeal from the judgment entered on January 3, 2024, requiring them to pay Mark Frick ("Mark") $142,900.00 as compensation for the difference in values of real estate that they exchanged. After careful review, we affirm but modify the judgment amount.

Bruce and Mark are brothers. Circumstances in both their lives changed to such a degree that Mark was seeking a smaller home while Appellants were seeking a larger home. They decided to exchange homes, with Appellants agreeing to pay the difference in value because they owned the smaller, less valuable home. As the trial court explained:

> [Mark] (and his late wife) became the owners of 4410 Jane Lane[, Erie, Pennsylvania] on January 31, 1989. [Appellants] became the owners of 4014 Stanton Street[, Erie, Pennsylvania]

on June 4, 2012. In 2020, the parties agreed to exchange properties due to changing life circumstances. As the Jane Lane property was more valuable than the Stanton Street property, the parties agreed that [Appellants] would pay [Mark] the difference in value between the two properties. On September 15, 2020, the parties each transferred the deeds to their respective properties for $1. [Appellants offered Mark a motorhome as partial payment, but Mark declined after discovering the motorhome was significantly damaged.] [Appellants] satisfied an existing home equity loan against the Jane Lane property in the approximate amount of $35,000.00. On May 12, 2021, [Appellants] tendered a $75,000 check to [Mark] which [Mark] declined.

Trial Court Opinion, 10/24/23, at 1-2. Appellants believe they only owe Mark $75,000 as they assert the difference between the value of the two homes is $110,000 minus the $35,000 they paid to satisfy Mark's home equity loan. *See* Appellants' Brief, at 28.

Mark filed suit seeking the difference in value of the two homes on June 30, 2021. The case proceeded to a non-jury trial on July 24, 2023. At the conclusion of trial, the court took the matter under advisement and issued its ruling on October 24, 2023, finding that:

It is undisputed that the parties agreed [Appellants] would pay [Mark] the difference in value of the two properties as the Jane Lane property is significantly more valuable than the Stanton Street property. However, the parties disagree on what amounts to use to find the difference in value. An action for breach of contract is established by pleading, "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." ***Core[S]tates Bank, N.A. v. Cutillo***, 723 A.2d 1053, 1058 (Pa. Super. 1999) (citation[] omitted). Here, the August 19, 2020 text messages [and trial testimony] demonstrate that [Mark] would accept valuing the Jane Lane property at $230,000 if [Appellants'] Stanton Street property is valued at $120,000. Significantly, Bruce Frick sets forth the offer as follows: "If we do 120, we'll give you 230." [Mark] replies "That's good." However, it is undisputed

- 2 -

that the Stanton Street property was not appraised at $120,000 but at $87,100. As the essential terms of this agreement were not met, no valid contract between the parties was created.

Trial Court Opinion, 10/24/23, at 3. The trial court then found that Mark proved Appellants were unjustly enriched by the exchange of properties and found the difference in value to be $142,900.00. Judgment against Appellants was entered for that amount. Appellants timely appealed and complied with the trial court's order to file a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b).

Appellants present one claim for our review:

Whether [t]he trial court committed an error of law by ruling that a legal contract did not exist for the sole reason that "the essential terms of this agreement were not met[?]"

Appellants' Brief, at 9.

This case involves the interplay of an oral contract and an equitable remedy, unjust enrichment. The standards for each are similar:

In the case of a disputed oral contract, what was said and done by the parties as well as what was intended by what was said and done by them are questions of fact. This [C]ourt is bound by the trial court's findings of fact, unless those findings are not based on competent evidence. Absent an abuse of discretion, we are bound by the trial court's assessment of the credibility of the parties and witnesses. However, the trial court's conclusions of law are not binding on an appellate court whose duty it is to determine whether there was a proper application of the law to the facts by the trial court.

**GMH Associates, Inc. v. Prudential Realty Group**, 752 A.2d 889, 898 (Pa. Super. 2000) (citations and quotation marks omitted). Further,

[w]hen reviewing equitable decrees, our scope of review and standard of review are deferential, but our deference has limits. This Court has said:

> We are bound to accept the trial judge's findings of fact, and accord them the weight of a jury verdict where supported by competent evidence. As for … factual and legal conclusions, we are not bound by the trial court's reasoning, and may reverse for an abuse of discretion or error of law.

*Wilson v. Parker*, 227 A.3d 343, 352 (Pa. Super. 2020) (citation, footnote, and brackets omitted).

Appellants assert the trial court erred in finding that the parties did not agree on the essential terms of the contract based upon text messages exchanged between Mark and Bruce. *See* Appellants' Brief, at 20. The trial court found that because the essential terms were not agreed upon, no valid contract was formed. *See* Trial Court Opinion, 10/24/23, at 3.

> Contemporary contract law generally provides that a contract is enforceable when the parties reach mutual agreement, exchange consideration and have outlined the terms of their bargain with sufficient clarity. An agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy.

> If an essential term is left out of the agreement, the law will not invalidate the contract but will include a reasonable term. For instance, if the parties do not specify a price, a court will impose a reasonable price which will usually be the item's market value. However, if the parties include the term but have expressed their intention ambiguously, the court will not impose a reasonable term and the contract may fail for indefiniteness. A court will not attempt to fix contractual terms which are inconsistent with the intent of the parties. That is because the paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties. … [I]n cases involving oral contracts the complete agreement is not recorded. Therefore, in that situation, courts must always examine the surrounding circumstances to determine the parties['] intent. Because courts wish to effectuate

the parties['] intentions, they may enforce an indefinite contract if its terms have become definite as the result of partial performance.

***Greene v. Oliver Realty, Inc.***, 526 A.2d 1192, 1194 (Pa. Super. 1987) (citations omitted).

As this case revolves around the exchange of properties, the essential terms required for the sale of real estate provide guidance:

> The essential terms that must be identified and agreed to in order to form a valid contract for the sale of real estate are the naming of the specific parties, property and consideration or purchase price. Where the existence of an informal contract is alleged, it is essential to the enforcement of such an informal contract that the minds of the parties should meet on all the terms as well as the subject matter. If anything is left open for future negotiation, the informal paper cannot form the basis of a binding contract.

***GMH***, 752 A.2d at 900 (citations and quotation marks omitted).

The trial court found that the terms were not sufficiently definite as to the value of the Stanton property and therefore, no binding contract was established. **See** Trial Court Opinion, 10/24/23, at 3. The trial court found that the text messages did not include a final agreement as to the value of each home. **See id.** We agree.

The "informal paper" that Appellants rely on, the text message exchange, is clearly left open when Bruce tells Mark that he is speaking with his wife. At that point, there is no agreement between the parties. Further, the text messages are ambiguous. One message relied upon by the Appellants is a group of numbers sent by Mark. **See** Appellants' Brief, at 21. Specifically,

- 5 -

Mark sent to Bruce, "230, 120, 110, 82, 28,000[.] Do you follow me[?] Are you feeling me[,] Reggie?". **See** Exhibit D-1 (unpaginated). At trial, Bruce attempted to explain the numbers. Bruce testified that he interpreted "230" as $230,000, the value of the Jane Lane property. **See** N.T. Trial, 7/24/23, at 53. He interpreted "120" as $120,000, the value of the Stanton Street property. **See id.** He interpreted "110" as $110,000, the difference in value between the properties. **See id.** He explained "82" was what he still owed on a motorhome they discussed as partial payment and the "28,000" was what was left after the partial payment of the motorhome. **See id.** However, no one testified to the value of the motorhome. The only testimony was that Bruce still owes $82,000 on the motorhome and Mark testified to the damage to the motorhome. **See id.** at 20-21, 53. It is uncertain what value the motorhome had at that time. As found by the trial court, these terms are ambiguous and unclear, and therefore these text messages cannot form the basis for a binding contract.

At trial, both parties admitted to discussing the matter orally after the text messages were exchanged. However, the parties disagree on what was discussed. Mark testified that he discussed with Bruce getting the homes appraised before the exchange, but Bruce refused because it would have cost additional money to get the appraisals completed. **See** N.T. Trial, 7/24/23, at 22. Bruce simply agreed he spoke with Mark over the phone but denied that Mark requested the homes be appraised. **See id.** at 55, 61. As such, again as

found by the trial court, this is an indefinite contract, which would normally fail because of its indefiniteness. *See Greene*, 526 A.2d at 1194 ("[I]f the parties include the term but have expressed their intention ambiguously, the court will not impose a reasonable term and the contract may fail for indefiniteness.") (citation omitted).

However, the contract was partially performed because the brothers' swapped deeds and moved into the respective homes. The trial court applied the equitable remedy of unjust enrichment to fulfill the indefinite term of the contract, the value of the properties.

> [T]he absence of an enforceable contract at law is the seed from which an unjust-enrichment claim in equity sprouts. The quasi-contract theories of *quantum meruit* and unjust enrichment, by definition, imply that no valid and enforceable written contract exists between the parties. Critically[,] the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract.

*Wilson*, 227 A.3d at 353 (quotation marks, ellipsis, and citation omitted). There are three elements the plaintiff must prove to obtain relief under the unjust enrichment concept:

> (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. … In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Artisan Builders, Inc. v. Jang*, 271 A.3d 889, 892 (Pa. Super. 2022) (citation omitted).

All three elements were met during trial. Mark and the Appellants switched houses, with the Appellants getting the larger, more valuable home. Clearly, that is a benefit conferred on the Appellants by Mark. The Appellants moved into the larger home and occupied it through trial, thereby appreciating the benefit. Allowing the Appellants to retain the larger home without paying for the difference in value between their smaller home and the larger home would be inequitable. Therefore, the trial court did not abuse its discretion in applying the quasi-contractual theory of unjust enrichment to the missing essential element of their contract.

The trial court found that the value of the larger home was $230,000. **See** Trial Court Opinion, 10/24/23, at 4. Mark does not dispute this value on appeal. **See** Appellee's Brief, at 10 ("The court concluded that Mark's property was worth $230,000. This conclusion is not disputed."). The trial court found the smaller home was valued at $87,100. **See** Trial Court Opinion, 10/24/23, at 4; N.T. Trial, 7/24/23, at 11 (expert in real estate appraisals testified the value of the Stanton Street property as of September 1, 2020, was $87,100). The difference in value is $142,900. **See id.** The trial court's findings of fact are supported by competent evidence. **See Wilson**, 227 A.3d at 352 (we are bound by the trial court's findings of fact if supported by competent evidence); **GMH**, 752 A.2d at 898 (same). In light of this record, we affirm the findings of the trial court.

We make one final note, however, as all parties agree that the Appellants already paid $35,000 that should be applied as a credit towards the final judgment amount. **See** Trial Court Opinion, 10/24/23, at 1 n.1; Appellants' Brief, at 27-28; Appellee's Brief, at 10, 13 n.3 ("The $35,000 credit is not disputed. … Bruce would be entitled to a $35,000 credit for payment made on a loan created by Mark against his property."). Judgment was entered for the full difference in value between the homes, $142,900. As all parties agree that the Appellants paid $35,000 to satisfy a loan of Mark's, we modify the judgment to reflect $35,000 already paid. **See Braun v. Wal-Mart Stores, Inc.**, 24 A.3d 875, 982 (Pa. Super. 2011) (Superior Court may modify the amount of judgment where the trial court made a patent mathematical error). Because we find the current judgment contains a mathematical error in the calculation of the final amount due, we modify the judgment amount to $107,900.

Judgment affirmed, and judgment to be entered for $107,900 as modified.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 07/23/2024